IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PREFERRED FAMILY
HEALTHCARE, INC.                                                                     PLAINTIFF

v.                                   Case No. 6:20-cv-6055

QUAPAW HOUSE, INC., *et al*.                                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Pat Parker's Motion for Summary Judgment. ECF No. 42. Plaintiff has responded. ECF No. 53. Defendant Pat Parker has replied. ECF No. 58. The Court finds the matter ripe for consideration.

## I. BACKGROUND

Plaintiff Preferred Family Healthcare, Inc. ("PFH") is a non-profit corporation based in Missouri that operated healthcare services facilities in Arkansas until October 2018. ECF No. 2, p. 1-3. Defendant Quapaw House, Inc. ("Quapaw") is an Arkansas registered non-profit corporation that provides healthcare services in Arkansas, for which it regularly receives Medicare and Medicaid reimbursements. *Id*. at p. 1. Defendant Casey Bright is a citizen of Arkansas and was the Chief Executive Officer of Quapaw. *Id*. Defendant Pat Parker is a citizen of Arkansas and served as Chairman of Quapaw's Board of Directors. *Id*. at p. 2. On October 12, 2018, PFH and Quapaw entered into a Master Lease and Promissory Note agreement ("First Lease") in which PFH agreed to lease its facilities in Arkansas to Quapaw. ECF No. 2-1. On April 7, 2019, PFH sold one of the properties rented by Quapaw. ECF No. 2, p. 3. Therefore, PFH and Quapaw entered into a modified lease agreement ("Second Lease") to reflect the reduced lease payments resulting from the sale. ECF No. 2-2.

By June 1, 2019, Quapaw had defaulted on most of the rent payments and the carryback note in the lease agreement. ECF No. 2, p. 3. PFH states that it allowed Quapaw to continue operating its

facilities out of concern for those receiving healthcare services at the facilities and because Quapaw gave assurances that it would obtain additional funding. *Id*. at p. 3. On June 17, 2019, after negotiations and assurances from Quapaw that it could obtain financing to pay its obligations, PFH and Quapaw entered into another amended lease and promissory note agreement ("Third Lease"). ECF Nos. 2, p. 3; 2-3. Quapaw subsequently failed to make any payments to PFH from July 1, 2019, through October 1, 2019. ECF No. 2, p. 4. Quapaw eventually made a partial payment in October 2019, but did not make any payments during the remainder of 2019 or any payments during 2020. *Id*. PFH states that at the time it filed its Complaint, Quapaw owed approximately $2.6 million in unpaid rent payments and interest on promissory notes. *Id*. at p. 5.

On October 25, 2019, Quapaw executed a business loan and promissory note agreement with Malvern National Bank ("MNB"). ECF No. 53-1; 53-2. Communications from Defendants Casey Bright and Pat Parker to PFH in anticipation of the loan explained that funding was imminent and Quapaw would soon be able to pay its obligations to PFH. ECF No. 2, p. 3-5; ECF No. 53, p. 4-9. This loan agreement eventually led MNB to bring claims against Quapaw and its officers for making misrepresentations in its loan application, and that litigation is ongoing. ECF No. 52, p. 2; *Malvern National Bank v. Quapaw House, Inc., et al.*, No. 26CV-20-377 (Garland County Circuit Court 2021). In November 2020, the state court entered a default judgment against Defendant Casey Bright noting that he had left the state and failed to appear or defend the claims against him. ECF No. 51-1.

On May 22, 2020, PFH filed its Complaint in this Court pursuant to 28 U.S.C. § 1332(a). ECF No. 2, p. 2. PFH brings claims for breach of contract and fraud against all Defendants. *Id*. at p. 5-7. PFH's breach of contract claims concern Quapaw's failure to pay its rent obligations under the multiple lease agreements between the parties. *Id*. at p. 5-6. PFH's fraud claims relate to misrepresentations it claims Defendants Quapaw, Pat Parker, and Casey Bright knowingly made to PFH regarding Quapaw's financial situation, the likelihood of securing additional funding, and the likelihood of paying the outstanding rental payments under the lease agreements. *Id*. at p. 6-7. All

Defendants initially failed to file an answer to PFH's Complaint, and the Court entered defaults against all Defendants. ECF Nos. 14; 15; 16. Defendant Pat Parker moved to set aside the default against him (ECF No. 20), and the Court subsequently granted his request. ECF No. 33. The defaults against Defendants Quapaw and Casey Bright have not been set aside.[1]

On April 26, 2021, Defendant Pat Parker filed his Motion for Summary Judgement. ECF No. 42. Pat Parker argues that PFH's claims must fail because he was not a party to any contract with PFH and because any alleged misrepresentations he made to PFH fall outside of statements that can be considered for fraud claims. ECF No. 43, p. 3-6.

## II. Legal Standard

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *See id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving

---

[1] The Court is not considering Defendant Quapaw's Motion for Partial Summary Judgment (ECF No. 45) because the entry of default against it (ECF No. 15) has not been set aside. Quapaw has neither filed an answer to PFH's Complaint nor moved to set aside the default against it. Quapaw's first filing in this matter is its attempted Motion for Partial Summary Judgment. ECF No. 45. While the Court denied (ECF No. 34) PFH's Motion for Default Judgment (ECF No. 24) against Quapaw, the default against Quapaw remains in place. Accordingly, the Court will continue to treat Quapaw as a non-participant in this matter.

party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Discussion

#### A. Applicable Law

The Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332(a) because of the diverse citizenship between PFH and Defendants and because the amount in controversy exceeds $75,000. Courts sitting in diversity apply the substantive law of the forum state. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-27 (1996). Each party argues their positions pursuant to Arkansas law. Accordingly, the Court will apply Arkansas substantive law to this matter.

#### B. Breach of Contract

Defendant Pat Parker ("Parker") argues that PFH's breach of contract claim must fail as a matter of law because there exists no contract between Parker and PFH. ECF No. 43, p. 3. Parker notes that every lease agreement referenced by PFH in its Complaint is between PFH and Quapaw. *Id*. Parker contends that PFH has failed to put forth any factual allegations that indicate that Parker was a party to the lease agreements between PFH and Quapaw for the use of PFH's facilities. *Id*. Parker concludes that PFH has failed to show that an agreement ever existed between Parker and PFH. *Id*. Therefore, Parker is entitled to summary judgment on this claim. *Id*.

PFH's response argues that Parker is personally liable for Quapaw's breach of contract. ECF No. 53, p. 10. PFH notes that Arkansas requires that the directors of a corporation have various fiduciary duties that they must discharge in good faith. *Id*. PFH further notes that so long as

4

directors of a corporation take an action in good faith, they are not personally liable for that action. *Id*. at p. 10-11. PFH then contends that its allegations of Parker's knowledge regarding the financially precarious status of Quapaw and its allegations of his misrepresentations regarding Quapaw's ability to pay its obligations show that Parker did not execute his role as Chairman of Quapaw's board of directors in good faith. *Id*. at p. 11-12. PFH then concludes that there is a genuine question of fact as to whether Parker should be considered a party to the lease agreements and held liable for Quapaw's breach of contract. *Id*. at p. 12.

Responding to PFH's arguments, Parker asserts that PFH did not attempt to put forth any allegations showing that an agreement existed between Parker and PFH. ECF No. 58, p. 5. Parker contends that PFH's references to the Arkansas conduct requirements for members of a board of directors does nothing to show that he personally entered into or executed a contract for which he is liable. *Id*. at p. 5-6. Parker also notes that PFH admits that Defendant Casey Bright executed the lease agreements with PFH on behalf of Quapaw and that PFH consistently describes PFH and Quapaw as the parties to the lease agreements. *Id*. at p. 6. Parker concludes that PFH has failed to put forth sufficient proof to show that there is a genuine question of fact as to whether a contract existed between Parker and PFH. *Id*.

To prove a claim for a breach of contract, the complaining party must show the existence of an agreement, a breach of that agreement, and resulting damages. *See Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 33 S.W.3d 224, 231-32 (Ark. 2000). "A member of a corporation is not, as such, personally liable for the acts, debts, liabilities, or obligations of the corporation." Ark. Code Ann. § 4-33-612. A member of a corporation's board of directors must discharge his duties in good faith, and so long as a member does, they will not be liable for actions taken as a director. *See* Ark. Code Ann. § 4-27-830(a)(1); Ark. Code Ann. § 4-27-830(d).

The Court finds that PFH has failed to show a genuine factual issue as to whether Defendant Pat Parker was a party to any agreement with PFH. PFH's allegations as to Parker's knowledge of

5

the poor financial situation of Quapaw and his alleged misrepresentations to PFH are unconvincing as to the breach of contract claim. Any party bringing a claim for breach of contract against a defendant must show an agreement between that party and the defendant. *See Ultracuts*, 33 S.W.3d at 231-32. PFH correctly notes that directors may be liable for actions not taken in good faith. *See* Ark. Code Ann. § 4-27-830(d). However, PFH has failed to sufficiently explain how being personally liable for alleged bad faith representations on behalf of Quapaw has made Parker a party to any of the lease agreements. All lease agreements at issue in this matter were between PFH and Quapaw and were executed by Casey Bright. ECF Nos. 2-1; 2-2; 2-3. PFH has not attempted to show that Parker himself executed the agreement between Quapaw and PFH, or that the execution would be an action for which he may be personally liable under Ark. Code Ann. § 4-27-830(d).[2] Assuming that PFH has shown that Parker acted in bad faith in his communications with PFH prior to the Third Lease, PFH has nevertheless failed to put forth a sufficient showing that could lead a fact finder to conclude that Parker was a party to any agreement. *See Anderson* at 250. Accordingly, the Court finds that there is no genuine question of fact that Parker was a party to any agreement with PFH. Thus, Parker is entitled to judgment as a matter of law as to PFH's breach of contract claim.

**C. Fraud**

Defendant Parker argues that PFH's fraud claim fails as a matter of law because the statements and representations PFH brings as evidence are not applicable to fraud claims. ECF No. 43, p. 4-. Parker notes that a fraud claim must involve representations of present or past circumstances. *Id*. at p. 4-6. Parker then contends that all the misrepresentations PFH alleges Parker made, such as Quapaw making future rent payments and the certainty of obtaining additional financing, were all in regard to future circumstances or events. *Id*. at p. 5-6. Parker also points to

---

[2] Even if Parker signed on behalf of Quapaw, representatives of a corporation that act within their power to contract on behalf of the corporation are not personally liable for the contract unless that agent agrees to be liable for the contract. *See McCullough v. Johnson*, 816 S.W.2d 886, 887 (Ark 1991). Perhaps Parker would be liable if he was the individual that executed the agreement with PFH on behalf of Quapaw and did so in bad faith. *See* Ark. Code Ann. § 4-27-830(d)

6

affidavits from himself and Quapaw's counsel which emphasize that all statements to PFH regarding Quapaw's ability to pay its obligations and obtain financing were in honest expectation of future events. *Id* (citing ECF Nos. 42-1; 42-2). Parker concludes that there is no genuine issue of fact as to PFH's failure to present a potentially successful fraud claim and that he should be granted summary judgment for this claim. *Id*. at p. 6.

In its response, PFH argues that the fraud claim should proceed because evidence indicates Parker knew the representations at issue were false when he made them. ECF No. 53, p. 3-7. PFH first contends that fraud claims can be founded on representations as to future circumstances if the individual making those representations knows them to be false when they are made. *Id*. at p. 3-4. PFH then contends that Parker's representations fit into this exception for future circumstances because he knew the statements he made regarding Quapaw's ability to pay back its obligations were false because he knew financing from MNB was bound to fail. *Id*. PFH notes that Parker signed all of the loan documents between Quapaw and MNB, which PFH also notes contained multiple misrepresentations on the tax and financial status of Quapaw. *Id*. at p. 4. PFH contends that Parker's responses to MNB's interrogatories in its separate suit against Quapaw indicate that Parker was likely aware of Quapaw's unpaid payroll taxes at the time he signed the loan documents. *Id*. PFH also points to the affidavit of its Chief Financial Officer, Thomas Weber ("Weber"), in which Weber declares that Parker stated on the phone that he was "intimately" involved with the loan application to MNB and that the financing would permit Quapaw to pay back the rent it owed to PFH. *Id*. at p. 4-5. PFH concludes that this evidence creates a genuine factual issue as to whether Parker knew his representations regarding Quapaw's loan with MNB and Quapaw's ability to pay PFH were false. *Id*. at p. 5.

In his reply, Parker argues that PFH has failed to present adequate evidence to counter his motion for summary judgment. ECF No. 58, p. 2-3. Parker contends that the references to the court proceedings between Quapaw and MNB are not relevant to PFH's fraud claim. ECF No. 58, p. 2-3.

Parker also contends that the documents and evidence presented by PFH fail to show direct representations made by Parker to PFH and instead involves Defendant Bright more than Parker. *Id*. at p. 3-4. Parker then reiterates that the only representations PFH can point to Parker making involve hopes for future occurrences that are typically inapplicable to fraud claims. *Id*. at p. 4-5. Parker concludes that PFH failed to meet his motion with enough evidence to create a genuine issue of fact as to the fraud claim. *Id*.

A claim for fraud consists of five elements: "(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance." *Tyson Foods, Inc. v. Davis*, 66 S.W.3d 568, 580 (Ark. 2002). "In general, fraud actions must be based on misrepresentations related to a past event or a present circumstance, not on an intention or a prediction about a future event." *Downum v. Downum*, 274 S.W.3d 349, 353 (Ark. App. 2008). "It is well-established that representations that are promissory in nature, or of facts that will exist in the future, though false, will not support an action for fraud." *Hobson v. Entergy Arkansas, Inc.*, 432 S.W.3d 117, 124 (Ark. App. 2014). A broken promise is typically subject to a breach of contract claim instead of a fraud claim. *See id*. However, the general rule against fraud applying to future conditions or circumstances does not apply if the individual making the representation about the future knows that it is false at the time it is made. *See Delta School of Commerce, Inc. v. Wood*, 766 S.W.2d 424, 427 (Ark. 1989). The exception for applying a fraud claim to representations regarding future events requires producing enough evidence to "permit an inference" that the individual making the representation "lacked an honest belief" about the representation. *Hobson* 432 S.W.3d at 125.

The Court finds that there is a genuine issue of fact as to PFH's fraud claim and that Parker's motion for summary judgment must be denied as to this claim. PFH has presented evidence to support its claim that Parker knew his representations as to Quapaw's future ability to get financing

8

and pay back its obligations were false. This allows PFH's claim to potentially fit into the exception for fraud claims regarding future circumstances. *See Delta School of Commerce, Inc.* S.W.2d at 427. The evidence presented by PFH includes: Parker's answers to MNB's interrogatories suggesting he knew of Quapaw's poor financials prior to the loan application (ECF No. 53-5), the loan documents between Quapaw and MNB, all signed by Parker, that misrepresented Quapaw's financial state (ECF Nos. 53-1; 53-2; 53-3; 53-4), and the affidavit of Thomas Weber stating that Parker informed Weber that he was "intimately" involved in Quapaw's attempt to get financing and that the loan would allow Quapaw to pay its obligations to PFH (ECF No. 53-6). Taken together, this evidence can "permit an inference" that Parker did not have an honest belief as to Quapaw's future ability to get financing and pay back what it owed to PFH. *Hobson* 432 S.W.3d at 125. Therefore, PFH has not simply rested on the allegations in its pleadings but has presented facts and evidence to counter Parker's motion and preclude summary judgment. *See Anderson*, 477 U.S. at 256. Also, the Court must view all of this evidence and draw all reasonable inferences from it in the light most favorable to PFH as the non-moving party. *See Nitsche* 446 F.3d at 845. Accordingly, the Court finds that PFH has presented a genuine issue of fact as to whether Parker knew his representations to PFH regarding Quapaw's financing and ability to pay were false. Therefore, Parker's motion for summary judgment as to PFH's fraud claim must be denied.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant Parker's Motion for Summary Judgment (ECF No. 42) should be **GRANTED IN PART** and **DENIED IN PART**. PFH's breach of contract claims against Defendant Parker are hereby dismissed with prejudice. PFH's fraud claims against Defendant Parker may proceed to trial.

**IT IS SO ORDERED**, this 1st day of September, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge
